UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY MCDOWELL,

              Plaintiff,

   v.

COUNTY OF LASSEN et al.,

              Defendants.

No. 2:23-cv-01007-DJC-DMC

ORDER

      Pending before the Court is a motion brought by Defendant County of Lassen (the "County") (also sued as County of Lassen Sheriff's Office) to dismiss claims two through five and seven through nine of Plaintiff's Second Amended Complaint.  (ECF No. 16.)

      Having considered the Parties' briefings and arguments, the Court hereby GRANTS the County's motion in part, and DENIES it in part.

**BACKGROUND**

      Plaintiff Timothy McDowell was hired as a correctional officer for the Lassen County Sheriff's Office in July 2016.  (Second Am. Compl. ("SAC") (ECF No. 14) ¶ 11.) Plaintiff, who is of African American descent, alleges he was frequently subjected to derogatory slurs and offensive use of the "N" word by his supervisor and co-workers, was unfairly targeted for discipline at a higher rate than his Caucasian counterparts,

and was repeatedly denied promotion to a patrol position despite his positive employment reviews, experience, and excellent performance at the police academy. (*Id.* ¶¶ 14–23.)  Plaintiff alleges this treatment led to a complaint being filed on his behalf against his supervisor, Sergeant Morberg, which led to an investigation and determination that Sergeant Morberg was treating Plaintiff differently because of his race. (*Id.* ¶ 22.)  After this investigation, Plaintiff was promoted to a patrol position on or about January 16, 2022.  (*Id.* ¶ 24.)

Two days later, on January 18, Plaintiff was placed on administrative leave for conduct that allegedly occurred while he was a correctional officer.  (*Id.* ¶¶ 24–25.) Following an investigation and Skelly hearing,[1] Plaintiff received a notice of intent to uphold his termination on June 8, 2022.  (*Id.* ¶¶ 25–26.)  In accordance with the Lassen County Personnel Rules and Regulations, specifically Rule 328 (referred to simply as Rule 328 in this Order), Plaintiff submitted a written request for a post-termination hearing within 10 days of the notice of termination to the County Personnel Director, Defendant Richard Egan.  (*Id.* ¶¶ 27–28.)  Plaintiff alleges the Personnel Director ignored his request and he never received a post-termination hearing.  (*Id.* ¶¶ 28–29.)

Plaintiff filed suit against the County on May 26, 2023 and filed a First Amended Complaint on July 7, 2023, alleging (1) deprivation of his rights and procedural due process under 42 U.S.C. § 1983 and (2) racial discrimination under California's Fair Employment and Housing Act ("FEHA"), codified at Cal. Gov. Code § 12940 *et seq*. (ECF Nos. 1, 4.)  Plaintiff's First Amended Complaint was dismissed by this Court on October 10, 2023, and Plaintiff was granted leave to file an amended complaint within 30 days.  (ECF No. 13.)  Plaintiff filed his operative Second Amended Complaint on November 9, 2023, adding Defendant Egan as a party, and alleging several claims under 42 U.S.C. § 1983, including (1) deprivation of his rights and due process

---

[1] A *Skelly* hearing is a "pre-disciplinary, administrative hearing, during which a public employee has an opportunity to present his version of relevant events."  *Cason v. San Diego Transit Corp.*, No. 10CV0098-IEG-MDD, 2011 WL 1596315, at *2 n.1 (S.D. Cal. Apr. 25, 2011).

1   (against Defendant Egan), (2) Rule 328 is unconstitutional on its face and as-applied

2   (against the County), (3) Rule 328 is unconstitutionally vague (against the County), and

3   (4) deprivation of his procedural due process rights under the Fourteenth

4   Amendment (against all Defendants); Plaintiff also brings state law claims for (5) a

5   violation of Cal. Gov. Code §3304(b) (against all Defendants); (6) racial discrimination

6   under the FEHA (against the County); (7) intentional infliction of emotional distress

7   (against all Defendants); (8) negligent infliction of emotional distress (against all

8   Defendants); and (9) wrongful termination in violation of public policy (against the

9   County).  (SAC ¶¶ 33–76.)

10      The County moves to dismiss Plaintiff's second, third, fourth, fifth, seventh,

11  eighth, and ninth causes of action, arguing (1) claims two, three, and four fail because

12  Plaintiff has failed to plead a facial and/or as-applied constitutional challenge to Rule

13  328; (2) claim five is barred by Cal. Gov. Code §§ 945.4, 945.6; (3) claim seven is

14  barred by Cal. Gov. Code § 945.6 and fails for want of "extreme and outrageous

15  conduct"; (4) claim eight is barred by Cal. Gov. Code § 945.4 and California's Workers'

16  Compensation law; and (5) claims seven, eight, and nine should be dismissed

17  because Plaintiff did not have leave of this Court to add them.  (Mot. Dismiss (ECF No.

18  16) at 1–2.)

19      The Court held a hearing on February 1, 2024 with Natalia Asbill-Bearor

20  appearing for Plaintiff, and Jacob Graham appearing for the County.  The Court took

21  the matter under submission.

22                          **LEGAL STANDARD**

23      A party may move to dismiss for "failure to state a claim upon which relief can

24  be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint

25  lacks a "cognizable legal theory or sufficient facts to support a cognizable legal

26  theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

27  While the court assumes all factual allegations are true and construes "them in the

28  light most favorable to the nonmoving party," *Steinle v. City & County of San*

                                    3

1  *Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus. v.*

2  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)), if the complaint's allegations do not

3  "plausibly give rise to an entitlement to relief" the motion must be granted, *Ashcroft v.*

4  *Iqbal*, 556 U.S. 662, 679 (2009).

5        A complaint need contain only a "short and plain statement of the claim

6  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed

7  factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This rule

8  demands more than unadorned accusations; "sufficient factual matter" must make the

9  claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or

10  formulaic recitations of elements alone do not suffice.  *Id.*  "A claim has facial

11  plausibility when the plaintiff pleads factual content that allows the court to draw the

12  reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This

13  evaluation of plausibility is a context-specific task drawing on "judicial experience and

14  common sense."  *Id.* at 679.  However, a court may not assume that the plaintiff "can

15  prove facts that it has not alleged . . . ."  *Associated Gen. Contractors of Cal., Inc. v. Cal.*

16  *State Council of Carpenters*, 459 U.S. 519, 526 (1983).

17        These same standards apply to claims against municipal governments under 42

18  U.S.C. 1983.  *AE v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).  A plaintiff's

19  allegations "may not simply recite the elements" of a claim under *Monell v.*

20  *Department of Social Services*, 436 U.S. 658 (1978).  *Id.* (quoting *Starr v. Baca*, 652

21  F.3d 1202, 1216 (9th Cir. 2011)).  Rather, the complaint must "contain sufficient

22  allegations of underlying facts to give fair notice" of the claims and allow the municipal

23  government "to defend itself effectively."  *Id.* (quoting *Starr*, 652 F.3d at 1216).  The

24  plaintiff's allegations "must plausibly suggest an entitlement to relief, such that it is not

25  unfair to require the opposing party to be subjected to the expense of discovery and

26  continued litigation."  *Id.* (quoting *Starr*, 652 F.3d at 1216).

27  ////

28

1    A court granting a motion to dismiss a complaint must also decide whether to

2    grant a leave to amend.  Leave to amend should be freely given where there is no

3    "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue

4    prejudice to the opposing party by virtue of allowance of the amendment, [or] futility

5    of amendment . . . ."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v.*

6    *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the *Foman* factors as those to

7    be considered when deciding whether to grant leave to amend, and explaining that

8    "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there

9    exists a presumption under Rule 15(a) in favor of granting leave to amend").  Dismissal

10   without leave to amend is proper only if it is clear that "the complaint could not be

11   saved by any amendment."  *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F. 3d 1048,

12   1056 (9th Cir. 2007) (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir.

13   2005)).

14                                  **DISCUSSION**

15   **I.    Second, Third, and Fourth Causes of Action (Constitutionality of**

16           **Rule 328)**

17           Rule 328 governs disciplinary actions for County personnel.  Section (b) of the

18   rule dictates that employees "shall be provided written notice of a proposed

19   discharge, suspension or demotion at least five (5) working days in advance of the

20   date the action is proposed to be taken," while section (c) lays out the information the

21   notice of proposed disciplinary action must contain, which includes notice "that the

22   employee has a right to appeal the action."  (*See* Request for Judicial Notice ("RJN"),

23   Ex. A (ECF No. 16-2).[2])  Sections (d)-(e) of the rule lay out the procedure for appealing

24   a disciplinary action:

25   _____

26   [2] Pursuant to Federal Rule of Evidence 201(b), the Court shall take notice, when requested and
     provided with sufficient information, of facts that are not subject to reasonable dispute because they
27   are "capable of accurate and ready determination by resort to sources whose accuracy cannot
     reasonably be questioned."  The County requests the Court take judicial notice of (1) Rule 328 of the
     Personnel Rules and Regulations of Lassen County, adopted pursuant to Ordinance No. 473-A of the
28   Board of Supervisors of the County of Lassen, and (2) Plaintiff's tort claim presented to the County on

1

2     (d) Should the Department Head determine to proceed with
the disciplinary action following the employee response or

3     should the employee choose not to respond prior to the
effective date of the discipline, the employee shall have up

4     to ten (10) working days from the effective date of the
discipline to notify the Personnel Director that he/she wants

5     the matter heard before a Hearing Officer.  The request shall

6     be in writing and shall contain the grounds for the appeal.

7

8     (e) Should the employee choose to have the matter heard
before a Hearing Officer, the parties shall jointly request a list

9     of five neutrals from the State Conciliation Service.  Within
five (5) working days after receiving the list of neutrals, the

10    parties shall select a name from the list and shall notify the
State Conciliation Service of the name of the selected

11    Hearing Officer.  If the parties are unable to agree on a name,

12    the Hearing Officer shall be selected by alternately striking a
name from the list, with the first option to strike determined

13    by lot.  Any cost of the service of the Hearing Officer shall be

14    shared equally by the parties.  At the hearing, all parties will
be entitled to be represented, present witnesses and

15    evidence, and cross examine opposing witnesses.   The

16    decision of the Hearing Officer shall be final and binding
except that such decision shall be advisory and subject to

17    ratification by the Board of Supervisors only if said decision
mandates a capital expenditure or significant, unbudgeted

18    expenditure.   In those instances, actions by the Board of

19    Supervisors may include modifications or reversals.

20 (*Id.*)

21       Here, Plaintiff alleges he followed the appeal procedure set forth in Rule 328

22 and submitted a written request for a post-termination hearing within 10 days of his

23 ─────────────────

24 November 14, 2022, and the County's notice of rejection on December 1, 2022.  (*See* RJN (ECF No. 16-2).)  This request is unopposed.  Accordingly, the Court grants judicial notice as to Rule 328, which is a

25 matter of public record and therefore a proper subject for judicial notice.  *See Tollis Inc. v. County of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial

26 notice."); *Madani v. County of Santa Clara*, No. 16-CV-07026-LHK, 2017 WL 1092398, at *4 (N.D. Cal. Mar. 23, 2017) (taking judicial notice of the rules and procedures for the county personnel board).  The

27 Court also grants judicial notice as to Plaintiff's tort claim and the County's notice of rejection, as the filing date, content, and rejection of a tort claim submitted in accordance with the California

28 Government Claims Act are appropriate matters for judicial notice.  *See Clarke v. Upton*, 703 F.Supp.2d 1037, 1042 (E.D. Cal. 2010).

1  notice of termination to the Personnel Director.  (SAC ¶¶ 27–28.)  However, Plaintiff

2  alleges the Personnel Director ignored his request and he never received a post-

3  termination hearing.  (*Id.* ¶¶ 28–29.)  Accordingly, Plaintiff's second cause of action

4  alleges Rule 328 is unconstitutional both on its face and as-applied to Plaintiff (SAC

5  ¶¶ 40–43); his third cause of action alleges Rule 328 is unconstitutionally vague (*id.* ¶¶

6  44–48); and his fourth cause of action, which the County asserts is practically

7  indistinguishable from his second cause of action, alleges that that the County

8  maintains a policy and practice of unlawfully and willfully interfering with its

9  employees' Fourteenth Amendment rights (*id.* ¶¶ 49–54).

10       The County argues claims two and three fail insofar as they are facial challenges

11  to Rule 328 and claims two and four fail insofar as they are as-applied challenges to

12  Rule 328.

13       **A.**    **Facial Challenge to Rule 328**

14       A facial challenge to a statute "must establish that no set of circumstances exists

15  under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745

16  (1987); *see also Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019).

17  An as-applied attack, on the other hand, does not necessarily challenge the entire

18  statute, focusing instead on a subset of its applications or application to a specific

19  factual circumstance, "under the assumption that the court can separate valid from

20  invalid subrules or applications."  *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir.

21  2011) (citations and quotations omitted).

22       Plaintiff alleges that Rule 328 is unconstitutional on its face because it fails to

23  require the County act upon a request for a post-termination evidentiary hearing

24  within a specified time frame, thereby denying employees their procedural due

25  process right to be heard at a meaningful time and in a meaningful manner.  (SAC

26  ¶¶ 40–43; Opp'n Mot. Dismiss (ECF No. 17) at 4–7.)

27       A section 1983 claim based upon the deprivation of procedural due process

28  has three elements: (1) a liberty or property interest protected by the Constitution;

1   (2) a deprivation of the interest by the government; and (3) lack of process.  *Portman v.*

2   *County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  A government employee has

3   a constitutionally protected property interest in continued employment if a law or rule

4   creates a legitimate claim of entitlement to his job.  *Bd. of Regents v. Roth*, 408 U.S.

5   564, 577 (1972).  In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985),

6   the Supreme Court established the framework for analyzing a procedural due process

7   claim where termination of public employment is at issue.  The employee's due

8   process interest requires, among other things, that he not be terminated without

9   notice and an opportunity to be heard.  *Id.* at 542.  "[S]ome form of pretermination

10   hearing" is required.  *Id.*  A post-termination hearing also must occur "at a meaningful

11   time" and "the existence of post-termination procedures is relevant to the necessary

12   scope of pre-termination procedures."  *Id.* at 547 & n.12.  Regarding the timing of the

13   post-termination hearing, the Court cautioned that "at some point, a delay in the post-

14   termination hearing would become a constitutional violation" although the nine-

15   month delay in that case was not a *per se* violation.  *Id.* at 547; *see also Gilbert v.*

16   *Homar*, 520 U.S. 924, 935–36 (1997) (remanding for consideration of whether

17   employer violated due process by failing to provide a prompt post-suspension

18   hearing).

19          The Court finds that Rule 328 is not unconstitutional on its face.  A facial

20   challenge is difficult to mount successfully, as the "fact that a statute 'might operate

21   unconstitutionally under some conceivable set of circumstances is insufficient to

22   render it wholly invalid.'"  *Bank of N.Y. Mellon v. Highland Ranch Homeowners Ass'n*,

23   No. 3:16-cv-00436-RCJ-WGC, 2017 WL 2259987, at *2 (D. Nev. May 23, 2017)

24   (quoting *Salerno*, 481 U.S. at 745).  "To put it slightly differently, if there were any

25   conceivable set of circumstances where the application of a statute would not violate

26   the constitution, then a facial challenge to the statute would necessarily fail."  *Id.*  Here,

27   the rule sets forth in clear terms the steps that shall be taken by the Personnel Director

28   should a disciplined employee choose to have a post-termination hearing, namely:

1    (1) the employee shall have ten days to submit a notice of appeal to the Personnel

2    Director, (2) then the parties shall jointly request a list of five neutrals, and (3) within

3    five days of receiving a list of neutrals, the parties shall select a neutral.  (RJN, Ex. A.)

4    While the rule gives the Personnel Director discretion as to when to act on an

5    employee's request, it does not, on its face, give him discretion to never act on an

6    employee's request.  Thus, the rule clearly requires employees be given some form of

7    post-termination due process.

8            Further, while Rule 328 does not require the Personnel Director to act upon a

9    request for a post-termination hearing within a specified time frame, the rule does not

10   preclude the Personnel Director from acting upon a request in a constitutionally timely

11   fashion.  Plaintiff has not pointed to, and this Court has not found, any definitive

12   timeline as to when a post-termination hearing must occur.  Rather, "[w]hether a delay

13   in a post-termination hearing constitutes a due process violation depends on 'the

14   importance of the private interest and the harm to this interest occasioned by delay;

15   the justification offered by the Government for delay and its relation to the underlying

16   governmental interest; and the likelihood that the interim decision may have been

17   mistaken.'"  *Trevino v. Lassen Mun. Util. Dist.*, No. CIV. S-07-2106-LKK-DAD, 2009 WL

18   385792, at *9 (E.D. Cal. Feb. 12, 2009) (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486

19   U.S. 230, 242 (1988)).  Thus, because a post-termination hearing under Rule 328 could

20   conceivably occur "at a meaningful time," the Court finds Rule 328 is constitutional on

21   its face.  *See, e.g., Cassim v. Bowen*, 824 F.2d 791, 798–99 (9th Cir. 1987) (finding a

22   due process claim that a statute and its regulations were facially invalid when they

23   failed to guarantee a timely post-deprivation hearing was unlikely to succeed on the

24   merits in the context of a preliminary injunction because "we are unwilling to

25   invalidate a statute because it might, but need not, be applied in an unconstitutional

26   manner" (quoting *McCahey v. L.P. Invs.*, 774 F.2d 543, 553 (2d Cir. 1985))).

27           *Barry v. Barchi*, 443 U.S. 55, 66 (1979), cited by Plaintiff for the proposition that

28   when "provisions for an administrative hearing, neither on its face nor as applied . . .

9

assure[] a prompt disposition of the outstanding issues" the policy is unconstitutional, is distinguishable.  In *Barchi*, the New York State Racing and Wagering Board suspended Barchi's horse trainer's license for fifteen days after a post-race test revealed that a horse trained by him had been drugged.  Barchi's pre-suspension process consisted of two lie-detector tests.  *Id.* at 59, 65.  The applicable New York statute afforded Barchi a post-suspension hearing but specified no time in which the hearing had to be held and allowed the Board to wait until thirty days after the hearing to issue a final order.  The Supreme Court held that the statute violated due process, since it permitted the state to sanction a trainer without "assurance of a prompt post-suspension hearing." *Id.* at 68.  Given the summary nature of Barchi's pre-suspension process and the briefness of his suspension, a prompt post-suspension hearing was critical.  The Court was careful to note that "the provision for an administrative hearing, neither on its face nor as applied in this case, assured a prompt proceeding and prompt disposition of the outstanding issues . . . . It is as likely as not that Barchi and others subject to relatively brief suspensions would have no opportunity to put the State to its proof until they have suffered the full penalty imposed." *Id.* at 66.  Here, however, Plaintiff received a far greater pre-deprivation process than Barchi in the form of a Skelly hearing, and is also not subject to the same brief penalty period Barchi was.  Thus, the Court finds the reasoning in *Barchi* inapplicable here.

Plaintiff also alleges Rule 328 is unconstitutionally vague because it fails to provide any timeframe as to when County personnel should act on an employee's request for a post-termination hearing, or provide any avenue for an employee to compel County personnel to act.  (SAC ¶¶ 44–48; Opp'n Mot. Dismiss at 7–8.)

"The standard for unconstitutional vagueness is whether the statute 'provide[s] a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Maldonado v. Morales*, 556 F.3d 1037, 1045 (9th Cir. 2009) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).  The void-for-vagueness doctrine chiefly applies to criminal

1   statutes, but can apply to civil laws as well.  Civil statutes, however, generally receive

2   less exacting vagueness scrutiny.  *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455

3   U.S. 489, 498–99 (1982).  In addition, a statute that does not prohibit any conduct falls

4   outside the scope of the void-for-vagueness doctrine.  *See United States v. David H.*,

5   29 F.3d 489, 491 (9th Cir. 1994); *Porto v. City of Newport Beach*, No. SACV 11-0180-

6   DOC-MLG, 2011 WL 2470128, at *8 (C.D. Cal. May 20, 2011), *report and*

7   *recommendation adopted*, No. SACV 11-00180-DOC, 2011 WL 2462555 (C.D. Cal.

8   June 21, 2011), *aff'd*, 509 F. App'x 665 (9th Cir. 2013) (stating that an ordinance

9   "plainly does not prohibit any conduct and therefore falls outside the purview of the

10  void-for-vagueness doctrine").

11       The Court finds that Rule 328 is not unconstitutionally vague as the void-for-

12  vagueness is clearly inapplicable here.  Rule 328 is not a civil statute that prohibits

13  conduct or imposes penalties; it is a personnel rule governing disciplinary

14  procedures.  Accordingly, Rule 328 is not void for vagueness.  *See Witzke v. Idaho*

15  *State Bar*, No. 1:22-cv-00478-REP, 2023 WL 3394925, at *5 (D. Idaho May 11, 2023)

16  ("Plaintiff's contention that the Challenged Rules are unconstitutionally vague is not

17  persuasive because the void-for-vagueness doctrine does not apply [to] procedural

18  rules.  The void-for-vagueness doctrine only applies to statutes which proscribe

19  conduct and are punishable with civil or criminal penalties.").

20       **B.    As-Applied Challenge to Rule 328**

21       "Facial and as-applied challenges differ in the extent to which the invalidity of a

22  statute need be demonstrated."  *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d

23  1084, 1096 (9th Cir. 2010) (citation and internal quotation marks omitted).  As-applied

24  attacks challenge a set of rules in a statute, a subset of the statute's applications, or

25  application of the statute to a specific set of facts.  *Isaacson v. Horne*, 716 F.3d 1213,

26  1230 (9th Cir. 2013).

27       Plaintiff alleges Rule 328 is unconstitutional as applied because Rule 328 is

28  silent as to when the County or its agents must act upon a request for a post-

1    termination hearing, and Plaintiff was denied a timely post-termination hearing by the

2    Personnel Director under Rule 328.  (Opp'n Mot. Dismiss 8–9.)  Because this claim is

3    brought against the County, it must meet the standards in *Monell*, which requires that

4    the Plaintiff plausibly allege that (1) he was deprived of a constitutional right, (2) the

5    County had a policy, custom, or practice, (3) that such policy, custom, or practice

6    amounted to deliberate indifference to Plaintiff's rights, and (4) the policy was the

7    moving force behind the constitutional violation.  *Gordon v. County of Orange*, 6 F.4th

8    961, 973 (9th Cir. 2021).  Plaintiff may satisfy *Monell*'s policy requirement in one of

9    four ways, by alleging: (1) a formal or expressly adopted official policy; (2) a

10   longstanding practice or custom which constitutes the "standard operating

11   procedure" of the County; (3) a decision of a decision-making official who was, as a

12   matter of state law, a final policymaking authority whose edicts or acts may fairly be

13   said to represent official policy in the area of decision; or (4) an official with final

14   policymaking authority either delegating that authority to, or ratifying the decision of,

15   a subordinate.  *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *Thomas v. County

16   of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014).

17          The Court has already held that the Personnel Director, Defendant Egan, was

18   not a final policymaker, nor was he delegated final policymaking authority, concerning

19   post-termination hearings for the purposes of *Monell* liability here.  (*See* ECF No. 13).

20   Accordingly, Plaintiff proceeds on the first two theories of *Monell* liability stated

21   above.

22          Plaintiff alleges the County's liability may be based on its express policy as

23   stated in Rule 328.  A *Monell* claim predicated upon a formal policy differs from one

24   premised upon a practice or custom in two respects.  First, formal policies often are

25   committed to writing, e.g., ordinances, regulations, statutes, and policy statements.

26   *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 497 (1986); *City of St. Louis v.

27   Praprotnik*, 485 U.S. 112, 121 (1988).  Second, a single constitutional violation

28   undertaken pursuant to a formal policy may be sufficient to establish municipal

12

1   section 1983 liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

2   However, a claim against a local governmental unit for municipal liability requires an

3   allegation that a "policy, custom or practice . . . was the 'moving force' behind the

4   constitutional violation . . . suffered." *Galen v. County of Los Angeles*, 477 F.3d 652,

5   667 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 694–95).

6        Here, Plaintiff has not sufficiently pled that the County's policy as stated in Rule

7   328 motivated the deprivation of his right to a timely post-termination hearing.

8   Indeed, under Rule 328, the official policy of the County was to provide Plaintiff a post-

9   termination hearing if requested. Plaintiff has not shown that the County's express

10  policy was to deny such hearings by ignoring notices of appeal. Rather, Plaintiff's

11  allegations support the inference that the Personnel Director, Defendant Egan, failed

12  to abide by the County's stated policy to provide post-termination hearings. *See* Rule

13  328(d)–(e) ("[T]he employee *shall* have up to ten (10) working days from the effective

14  date of the discipline to notify the Personnel Director that he/she wants the matter

15  heard before a Hearing Officer . . . . Should the employee choose to have the matter

16  heard before a Hearing Officer, the parties *shall* jointly request a list of five neutrals

17  from the State Conciliation Service." (emphasis added)). Allegations that violations of

18  a policy caused harm are insufficient to state a *Monell* claim. *See, e.g., Scott v.*

19  *Villanueva*, No. 2:22-cv-06614-VBF-JDE, 2023 WL 3571957, at *5 (C.D. Cal. Feb. 6,

20  2023) (finding plaintiff's allegations that a sheriff's deputy transported him in a manner

21  that violated jail policy was insufficient to state a *Monell* claim). Accordingly, the Court

22  finds that Plaintiff has failed to state a *Monell* claim based on express County policy.

23       A failure to allege a formal policy does not necessarily spell the end for

24  Plaintiff's *Monell* claims, as he still may establish liability through allegations that

25  demonstrate the constitutional harms suffered were the result of a longstanding

26  practice or custom which constitutes the standard operating procedure of the local

27  government entity. *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984–85 (9th

28  Cir. 2002). "Practices" and "customs" differ from express policies in that they generally

1   have "not been formally approved by an appropriate decisionmaker" but are still "so

2   wide-spread as to have the force of law." *Hunter v. County of Sacramento*, 652 F.3d

3   1225, 1233 (9th Cir. 2011).

4          Here, Plaintiff alleges "it is the policy and practice of the County of Lassen to

5   discriminate against minorities, including African Americans, and to continue the

6   discriminatory conduct/practice and custom by denying post-evidentiary hearing to

7   minorities." (SAC ¶ 29.)  Plaintiff further alleges he was "subjected to a violation of his

8   rights of due process in that his property interest in his job was taken as a result of a

9   policy of the County of Lassen which effectively denied him a post-termination

10   evidentiary hearing because he is a minority." (*Id.* ¶ 36.)  However, "to properly plead

11   a claim under *Monell*, it is insufficient to allege simply that a policy, custom, or practice

12   exists that caused the constitutional violations." *Brown v. Contra Costa County*, No.

13   12-cv-1923-PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) ("The allegation that

14   defendants discriminated against African-American employees (including plaintiff) in

15   the DA's office is not sufficient to support a claim that there was an official policy or

16   custom of discrimination.  And, even if it were, plaintiff still has not alleged facts

17   showing that discrimination against African-American attorneys is a long-standing or

18   widespread custom or practice at the Contra Costa DA's office.").  Unlike allegations

19   of an express policy, "[l]iability for improper custom may not be predicated on

20   isolated or sporadic incidents; it must be founded upon practices of sufficient

21   duration, frequency and consistency that the conduct has become a traditional

22   method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

23   Plaintiff has failed to allege more than this one instance of the County denying a post-

24   termination hearing to an employee based on their race.  This is insufficient to support

25   a policy or practice claim.  *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A

26   single constitutional deprivation ordinarily is insufficient to establish a longstanding

27   practice or custom."); *see also Bagley v. City of Sunnyvale*, No. 16-cv-02250-JSC, 2017

28   WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) ("Where courts have allowed *Monell* claims

1    to proceed at the motion to dismiss stage, plaintiffs have pled multiple incidents of

2    alleged violations.").

3           Finally, the Court notes that Plaintiff argues that the County failed to provide

4    adequate safeguards for Plaintiff's constitutional rights by failing to specify a timeline

5    for a post-termination hearing in Rule 328.  (Opp'n Mot. Dismiss at 9.)  "[P]olicies of

6    action" and "policies of inaction" may both give rise to liability under *Monell*.  *Jackson*

7    *v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (citation omitted).  A policy of inaction "is

8    based on a government body's 'failure to implement procedural safeguards to

9    prevent constitutional violations.'"  *Id.* (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d

10   1128, 1143 (9th Cir. 2012)).  However, in inaction cases, the plaintiff must show, first,

11   "that [the] policy amounts to deliberate indifference to the plaintiff's constitutional

12   right."  *Id.* (quoting *Tsao*, 698 F.3d at 1143).  This requires showing that the defendant

13   "was on actual or constructive notice that its omission would likely result in a

14   constitutional violation."  *Tsao*, 698 at 1145 (citations omitted).  Second, the plaintiff

15   must show "that the policy caused the violation in the sense that the municipality

16   could have prevented the violation with an appropriate policy."  *Id.* at 1143 (citations

17   and internal quotation marks omitted).  Plaintiff has not made such a deliberate

18   indifference showing here.

19          Accordingly, Plaintiff's second and fourth causes of action will be dismissed.

20   The Court is inclined to dismiss those claims with prejudice given that the Court

21   dismissed Plaintiff's *Monell* cause of action previously for failing to state a claim.  (*See*

22   ECF No. 13.)  However, Plaintiff informed the Court at the hearing that he recently

23   received a letter from the County informing him the County did not respond to his

24   request for a post-termination hearing because it was incomplete.  To the extent that

25   Plaintiff believes this letter may support a claim for *Monell* liability, Plaintiff is granted

26   leave to amend his second and fourth claims on that basis.  However, Plaintiff's third

27   cause of action will be dismissed with prejudice as the void-for-vagueness doctrine is

28   inapplicable to Plaintiff's claim and amendment would be futile.

1    **II.    Fifth Cause of Action (Cal. Gov. Code §§ 945.4, 945.6)**

2         Plaintiff's fifth cause of action alleges a claim under the Public Safety Officers'

3    Procedural Bill of Rights ("POBRA"), which provides, in part, that "[n]o punitive action

4    . . . shall be undertaken by any public agency against any public safety officer who has

5    successfully completed the probationary period that may be required by his or her

6    employing agency without providing the public safety officer with an opportunity for

7    administrative appeal."  Cal. Gov. Code § 3304(b).

8         Suits for money or damages against a California governmental entity are

9    regulated by the California Government Claims Act ("CGCA").  *DiCampli-Mintz v.*

10   *County of Santa Clara*, 55 Cal. 4th 983, 989 (2012).  In part, the CGCA provides that

11   "no suit for money or damages may be brought against a public entity on a cause of

12   action for which a claim is required to be presented . . . until a written claim therefor

13   has been presented to the public entity and has been acted upon . . . or has been

14   deemed to have been rejected . . . ."  Cal. Gov. Code § 945.4.  Further, "[u]nder

15   California Government Code § 945.6, an individual has six months from the date the

16   [entity] mails written notice of the rejection of his claims to file suit.  Courts have

17   consistently found claims filed beyond the six-month period to be time-barred."

18   *Mohsin v. Cal. Dep't of Water Res.*, 52 F. Supp. 3d 1006, 1018 (E.D. Cal. 2014); *see*

19   *also* Cal. Gov. Code § 945.6.

20        Here, the County argues Plaintiff presented a tort claim to the County on

21   November 14, 2022 (*see* RNJ, Ex. B (ECF No. 16-2)), but Plaintiff's POBRA claim, which

22   is subject to CGCA, was not included, violating Cal. Gov. Code § 945.4.  (Mot. Dismiss

23   at 8–9.)

24        However, the Court finds that Plaintiff substantially complied with the

25   presentation requirement of Cal. Gov. Code § 945.4 such that his POBRA claim is not

26   barred.  There is a two-part test for substantial compliance.  *Garber v. City of Clovis*,

27   698 F. Supp. 2d 1204, 1215 (E.D. Cal. 2010).  "The court must determine: 'Is there

28   some compliance with all of the statutory requirements; and, if so, is this compliance

16

1  sufficient to constitute substantial compliance?'" *Id.* (quoting *City of San Jose v.*

2  *Superior Ct.*, 12 Cal. 3d 447, 456–57 (1974)).  Put another way, the "test for substantial

3  compliance is whether the face of the filed claim discloses sufficient information to

4  enable the public entity to make an adequate investigation of the claim's merits and

5  settle it without the expense of litigation."  *Connelly v. County of Fresno*, 146 Cal. App.

6  4th 29, 38 (2006).  A "claim need not contain the detail and specificity required of the

7  pleading, but need only fairly describe what the entity is alleged to have done."

8  *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446

9  (2004).  "Only where there has been a 'complete shift in allegations, usually involving

10  an effort to premise civil liability on acts or omissions committed at different times or

11  by different persons than those described in the claim' have courts generally found

12  the complaint barred."  *Id.* at 447 (quoting *Blair v. Superior Ct.*, 218 Cal. App. 3d 221,

13  225 (1990)).  Where, however, "the complaint merely elaborates or adds further detail

14  to a claim but is predicated on the same fundamental actions or failures to act by the

15  defendants, courts have generally found the claim fairly reflects the facts pled in the

16  complaint."  *Id.*

17      Here, the substance of Plaintiff's claim complied with the requirements of Cal.

18  Gov. Code § 910, which dictates the contents of a tort claim.  He stated the date of his

19  termination, named the Lassen County Sheriff's Office as the party responsible, and

20  generally stated the circumstances of his termination.  (RJN, Ex. B.)  While Plaintiff did

21  not mention POBRA specifically, he claimed "Wrongful Termination in Violation of

22  Public Policy" and "Violation of Due Process Rights under 42 U.S.C. s. 1983."  The

23  Court finds this was sufficient to put the County on notice that Plaintiff alleged his due

24  process rights were violated in connection with the termination of his employment,

25  allegations which also form the basis of Plaintiff's POBRA claim.  Accordingly, the

26  Court finds that Cal. Gov. Code § 945.4 does not bar Plaintiff's POBRA claim here.

27      The County also argues Plaintiff's POBRA claim is time-barred as the County

28  rejected Plaintiff's tort claim on December 1, 2022, and Plaintiff's Second Amended

1   Complaint, which added the POBRA claim, was filed on November 9, 2023, past the 6-
2   month period provided by Cal. Gov. Code § 945.6. (Mot. Dismiss at 9.) Further, the
3   County argues Plaintiff's POBRA claim does not relate back to his original or First
4   Amended Complaint. (*Id.*)

5        Under the Federal Rules of Civil Procedure, an amendment to a pleading
6   relates back to the date of the original pleading when "the law that provides the
7   applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). Thus,
8   "if an amendment relates back under the state law that provides the applicable statute
9   of limitations, that amendment relates back under Rule 15(c)(1) even if the
10  amendment would not otherwise relate back under the federal rules." *Butler v. Nat'l*
11  *Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200 (9th Cir. 2014). Under California law,
12  an amended claim relates back if it (1) rests on the same general set of facts,
13  (2) involves the same injury, and (3) refers to the same instrumentality as alleged in the
14  original complaint. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 408–09 (1999).

15       To involve the same general set of facts, the amended claim must be based on
16  the same operative facts – those creating the right to recovery – alleged in the original
17  complaint. *Barrington v. A.H. Robins Co.*, 39 Cal. 3d 146, 154 (1985). Here, Plaintiff's
18  initial Complaint included a procedural due process claim under 42 U.S.C. § 1983.
19  Plaintiff's POBRA claim is based upon the same set of facts alleged for his due process
20  claim, i.e., that he was entitled to a post-termination evidentiary hearing, which was
21  not provided to him. (*See* Compl. (ECF No. 1) ¶¶ 10, 24–25, 28; SAC ¶¶ 12, 26–29, 32,
22  41, 55–59.) Next, to determine whether the due process claim and the POBRA claim
23  involve the same injury, the Court must consider the primary rights protected by each.
24  *Furnace v. Giurbino*, 838 F.3d 1019, 1024 (9th Cir. 1991). Both claims involve his right
25  to procedural due process. Accordingly, the underlying rights are the same. Lastly,
26  the Court must determine whether the due process claim and POBRA claim involve
27  the same instrumentality, or cause. *Coronet Mfg. Co., Inc. v. Superior Ct.*, 90 Cal. App.
28  3d 342, 347 (1979). Here, the POBRA claim and due process claim were caused by

1  the County terminating Plaintiff's employment without providing him with a post-

2  termination hearing.  Thus, the Court holds Plaintiff's POBRA claim relates back to

3  Plaintiff's first Complaint under California law.  Consequently, there is no need to also

4  consider whether the POBRA claim relates back under Rule 15.  *See Butler*, 766 F.3d

5  at 1200.

6        Accordingly, the Court denies the motion to dismiss Plaintiff's fifth cause of

7  action.

## III.    Seventh Cause of Action (Cal. Gov. Code § 945.6 and Extreme and Outrageous Conduct)

10        Plaintiff's seventh cause of action alleges intentional infliction of emotional

11  distress ("IIED") based on the racial discrimination he allegedly experienced while

12  employed by the County, citing Cal. Gov. Code § 815.2 (i.e., respondeat superior) as

13  the basis for the County's liability.  (SAC ¶¶ 66–69.)

14        The County moves to dismiss this claim, arguing that it was not brought within

15  six months as required under Cal. Gov. Code § 945.6.  (Mot. Dismiss at 10.)  The

16  County also argues this claim fails for want of "extreme and outrageous conduct," as

17  emotional distress claims cannot be based on personnel management activity even

18  where improperly motived.  (*Id.*)

19        The Court finds that Plaintiff's claim relates back to the original Complaint.  As

20  stated above, under California law, an amended claim relates back if it (1) rests on the

21  same general set of facts, (2) involves the same injury, and (3) refers to the same

22  instrumentality as alleged in the original complaint.  *Norgart*, 21 Cal. 4th at 408–09.

23  The original Complaint alleged racial discrimination in violation of the FEHA.  (*See*

24  Compl. ¶¶ 31–36.)  Here, Plaintiff's IIED claim is based on the same allegations of

25  racial discrimination as in Plaintiff's initial Complaint.  (*See id.* ¶¶ 8, 11, 13–21, 31–36;

26  SAC ¶¶ 10, 13, 15–23, 60–69.)  Further, the claims involve the same injury, as they are

27  both intentional torts, and Plaintiff initial Complaint alleged that the racial

28  discrimination caused him "humiliation, embarrassment, anxiety, mortification, mental

1    anguish, and emotional distress." (Compl. ¶ 36.)  Finally, both claims were caused by

2    the racial discrimination Plaintiff allegedly experienced in the workplace.  Accordingly,

3    the Court finds that Plaintiff's IIED claim relates back.

4         The Court also finds that Plaintiff has sufficiently pled extreme and outrageous

5    conduct.  The elements of an IIED claim are: (1) extreme and outrageous conduct by

6    defendant; (2) made with intent to cause, or with reckless disregard of the probability

7    of causing, emotional distress; (3) severe emotional suffering; and (4) actual and

8    proximate causation.  *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty*

9    *USA, Inc.*, 129 Cal. App. 4th 1228, 1259 (2005); *Bogard v. Emps. Casualty Co.*, 164 Cal.

10   App. 3d 602, 616 (1985).  Personnel management decisions alone cannot form the

11   basis of an IIED claim.  *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996)

12   ("A simple pleading of personnel management activity is insufficient to support a

13   claim of [IIED], even if improper motivation is alleged.").  However, Plaintiff has pled

14   that he was subjected on a daily basis to use of the "N" word by his co-workers and

15   supervisors, and was denied promotions and treated differently than his Caucasian

16   coworkers based on his race.  (SAC ¶¶ 15–16, 18–19, 21–23.)  Courts have found racial

17   slurs and epithets sufficient to constitute intentional infliction of emotional distress.

18   *See, e.g., Robinson v. Hewlett-Packard Corp.*, 183 Cal. App. 3d 1108, 1129–30 (1986)

19   (finding summary judgment on intentional infliction of emotional distress claim

20   inappropriate because use of racial slurs may constitute outrageous conduct); *Alcorn*

21   *v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 498–99 (1970) (holding that complaint stated a

22   cause of action for intentional infliction of emotional distress where supervisor fired

23   African-American employee while shouting various racial epithets).

24        Accordingly, the Court declines to dismiss Plaintiff's seventh cause of action.

25   **IV.   Eighth Cause of Action (Cal. Gov. Code § 945.4 and California's**

26           **Workers' Compensation law)**

27        Plaintiff's eighth cause of action alleges negligent infliction of emotional

28   distress ("NIED").  (SAC ¶¶ 70–72.)

                                          20

1    The County moves to dismiss, arguing Plaintiff is barred from asserting this

2    claim under Cal. Gov. Code § 945.4 as negligence was not reflected in his tort claim to

3    the County. (Mot. Dismiss at 10.)  Further, the County argues NIED is a common law

4    claim precluded by the exclusive remedy provided by California's Worker's

5    Compensation scheme. (*Id.* at 11.)  Finally, the County argues that Plaintiff has not

6    identified a statutory basis for the County's liability as to this claim. (*Id.* at 10.)

7    The Court finds, as it did with Plaintiff's seventh claim *supra*, that Plaintiff

8    substantially complied with the presentation requirement of Cal. Gov. Code § 945.4

9    for the purposes of this claim.  Plaintiff alleges NIED based on racial discrimination

10   and denial of his right to a post-termination hearing. (SAC ¶ 71.)  In Plaintiff's tort

11   claim, he sought damages for loss of employment and severe emotional distress, and

12   listed IIED and racial discrimination as potential causes of action. (*See* RJN, Ex. B.)

13   Thus, Plaintiff's tort claim put the County on sufficient notice that it could be sued for

14   Plaintiff's emotional distress, which encompasses Plaintiff's NIED claim.

15   The Court also finds that Plaintiff's NIED claim is not barred by California's

16   Workers' Compensation law.  "Though generally, an employee who sustains an injury

17   'arising out of and in the course of the employment' is limited to recovery provided

18   under the California's Workers' Compensation Act, including for emotional distress

19   claims, there are exceptions where fundamental public policy is involved." *Wilson v.*

20   *City of Fresno*, No. 1:19-cv-01658-DAD-BAM, 2020 WL 5366302, at *22 (E.D. Cal.

21   Sept. 8, 2020) (quoting *Livitsanos v. Superior Ct.*, 2 Cal. 4th 744, 753 (1992)).  "The

22   California Supreme Court has clarified that emotional distress caused by racial

23   discrimination is not subject to the exclusivity provisions of the workers' compensation

24   laws." *Id.* (citing *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994)); *see also Nazir v.*

25   *United Airlines, Inc.*, 178 Cal. App. 4th 243, 288 (2009) ("A claim for distress arising out

26   of employment is 'not barred where the distress is engendered by an employer's

27   illegal discrimination practices.'" (quoting *Accardi v. Superior Ct.*, 17 Cal. App. 4th

28   341, 352 (1993))).

1   　　　　The County argues courts have held claims for intentional and negligent

2   infliction of emotional distress are barred by workers compensation exclusivity even

3   when based on purported violations of public policy or discriminatory, retaliatory, or

4   harassing conduct in the workplace, citing *Miklosy v. Regents of Univ. of California*, 44

5   Cal. 4th 876, 902 (2008) and *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144,

6   161 (2014).  (Mot. Dismiss at 10–11; Reply Mot. Dismiss (ECF No. 18) at 5.)  However,

7   *Miklosy* and *Yau* do not compel dismissal here.  "While the Supreme Court in *Miklosy*

8   held that allegations of whistleblower retaliation were insufficient to state an exception

9   to workers' compensation exclusivity, it did not remove the jurisprudential basis on

10   which numerous authorities have held that allegations of FEHA discrimination and

11   retaliation did state such an exception."  *Light v. Dep't of Parks & Recreation*, 14 Cal.

12   App. 5th 75,101 (2017) (emphasis in original).  Thus, *Miklosy* did not "abandon the

13   long-standing view that unlawful discrimination and retaliation in violation of FEHA

14   falls outside the compensation bargain and therefore claims of intentional infliction of

15   emotional distress based on such discrimination and retaliation are not subject to

16   workers' compensation exclusivity."  *Id.*  Here, Plaintiff's NIED claim is based on racial

17   discrimination in the workplace, which is prohibited under the FEHA.  *See Crawford v.*

18   *MCI Worldcom Communs., Inc.*, 167 F. Supp. 2d 1128, 1132 (S.D. Cal. 2001)

19   ("California's FEHA and Title VII both prohibit employment discrimination based on

20   race.").  Accordingly, Plaintiff's claim is not barred by California Workers'

21   Compensation law.

22   　　　　However, the County is correct that, as a public entity, it is not liable for an

23   injury except as otherwise provided by statute.  Cal. Gov. Code § 815(a); *see also Hoff*

24   *v. Vacaville*, 19 Cal. 4th 925, 932 (1998) ("[I]n California, all government tort liability

25   must be based on statute." (internal quotations omitted)).  Plaintiff has not alleged

26   which statutory authority permits his direct claim against the County here.  Because

27   the Complaint fails to identify an appropriate statute, dismissal of this claim against

28   the County is warranted.  *See, e.g., Strawn v. Sokoloff*, No. 1:22-CV-1245-AWI-EPG,

1  2023 WL 2760904, at *10–11 (E.D. Cal. Mar. 31, 2023) (granting dismissal of plaintiff's
2  NIED claim against a city with leave to amend because the complaint failed to specify
3  a statute imposing direct liability).

4       Accordingly, Plaintiff's eighth claim will be dismissed with leave to amend.

5  **V.   Leave to Add Claims Seven, Eight, and Nine**

6       Finally, the County argues that Plaintiff's seventh, eighth, and ninth claims
7  should be dismissed because Plaintiff was not granted leave to add these claims in the
8  Court's order dismissing Plaintiff's First Amended Complaint.  (Mot. Dismiss at 11–12.)

9       Under Rule 15, a party may amend his or her pleading "once as a matter of
10  course [and] . . . in all other cases, a party may amend its pleading only with the court's
11  leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P.
12  15(a).  District courts in this circuit generally allow plaintiffs to add new claims or
13  parties to an amended complaint where a prior order of dismissal granted leave to
14  amend without limitation.  *Jameson Beach Prop. Owners Ass'n v. United States*, No.
15  2:13-cv-01025-MCE-AC, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014).  On the
16  other hand, where a prior court order granted limited leave to amend, district courts
17  in this circuit generally strike new claims or parties contained in an amended
18  complaint when the plaintiff did not seek leave to amend.  *See, e.g., Benton v. Baker*
19  *Hughes*, CV 12-07735-MMM, 2013 WL 3353636, at *3 (C.D. Cal. June 30, 2013);
20  *Crane v. Yarborough*, CV 05-8534 DSF-JC, 2012 WL 1067956, at *1 (C.D. Cal. Mar. 29,
21  2012).  Thus, whether a district court will accept new claims and/or parties in an
22  amended complaint after a motion to dismiss will depend on whether the plaintiff was
23  granted leave to amend with or without limitation.  *Urista v. Bank of Am., N.A.*, No.
24  C11-03097 HRL, 2012 WL 10596, at *6 (N.D. Cal. Jan. 3, 2012).

25       Here, the Court finds that leave to amend was granted without limitation.  While
26  the Court specifically noted in its previous order that amendment would be granted in
27  order for Plaintiff to add claims concerning the constitutionality of Rule 328 and
28  POBRA, nothing in the Court's language dictated these were the only claims Plaintiff

1    could add or that Plaintiff needed to seek leave of the Court to add further claims.  *Cf.*

2    *Rodriguez v. County of San Joaquin by & through the San Joaquin County Human*

3    *Servs. Agency*, No. 2:16-cv-00770-TLN-JDP, 2022 WL 956558, at *7 (E.D. Cal. Mar. 30,

4    2022) (finding leave to amend was limited when the court's previous order stated "if

5    Plaintiff wishes to bring claims against [Defendant] at a later date, he may file a motion

6    to do so pursuant to Rule 15").

7         Accordingly, the Court finds that leave to amend was freely given, and will not

8    strike Plaintiff's seventh, eighth, or ninth claim on this basis.  *See, e.g., Gilmore v.*

9    *Union Pacific R. Co.*, No. 09-CV-02180, 2010 WL 2089346, at *4 (E.D. Cal. May 21,

10   2010) (allowing plaintiff to add new claims without having asked leave because court

11   had granted leave to amend without limitation and defendants would not be

12   prejudiced).

13                              **CONCLUSION**

14        In accordance with the above, IT IS HEREBY ORDERED the County's Motion to

15   Dismiss (ECF No. 16) is GRANTED in part and DENIED in part.  Specifically, Plaintiff's

16   second, fourth, and eighth causes of action are DISMISSED with leave to amend, while

17   Plaintiff's third cause of action is DISMISSED with prejudice.

18        Plaintiff is further GRANTED leave to file an amended complaint within thirty

19   (30) days.  However, if Plaintiff wishes to bring any new claims against either

20   Defendant, Plaintiff must file a motion to do so pursuant to Rule 15 of the Federal

21   Rules of Civil Procedure.

22

23   Dated:  March 1, 2024                    /s/ Daniel J. Calabretta
                                         _____
24                                        THE HONORABLE DANIEL J. CALABRETTA
                                          UNITED STATES DISTRICT JUDGE
25

26

27

28